# DECLARATION OF STONIE CARLSON

I, Stonie Carlson, Special Agent with the Federal Bureau of Investigation, declare as follows:

1. I have been employed by the Federal Bureau of Investigation since 2004. I am currently assigned to a violent crime and gang squad in Oakland, California. I am also currently assigned as a Task Force Officer to the Pacific Southwest Regional Fugitive Task Force, a U.S. Marshal's led fugitive Task Force focusing on local, state and federal fugitives, most of which are violent offenders with extensive criminal histories.

### Background knowledge on Hopkins's criminal activity and general whereabouts.

2. In August 2015, in my capacity of a Fugitive Task Force Officer, I was asked to help find a fugitive by the name of Askari Aquil Mohamad, a/k/a Chanta Hopkins, who had an outstanding arrest warrant out of Placer County for Counterfeiting. At around this same time, I learned from another recently captured fugitive who, when captured, possessed fraudulent credit cards, that Hopkins was generally in the business of making and distributing fraudulent credit cards. I also learned that, around that time, Hopkins drove two luxury cars—a dark color Audi Q7 and a Mercedes Maybach.

3. On August 24, 2015, I and other law enforcement officers observed an Audi Q7 parked near the intersection of Fruitvale and Foothill Blvd., Oakland, CA, across the street from Willie Brown's Liquor store. Through my work with members of the Oakland Police Department, I learned that Hopkins and his associates were known to hang out in front of Willie Brown's. We set up surveillance of the Audi for several hours but no one returned to the vehicle.

### Information provided by a confidential informant

4. Sometime in the fall of 2015, likely in the November to December timeframe, I learned from a closed FBI confidential informant that Hopkins, who the CI knew was a fugitive, was providing fraudulent credit cards to Donnell Artis.

//

//

## Attempted Artis arrest and security sweep

5. On March 24, 2016, Artis was a fugitive. Based on information obtained from the CI—namely, that Artis spent most nights and otherwise a lot of time at the apartment of his girlfriend, Ronisha Macey—I and other Task Force members attempted to arrest Artis at that apartment. At the time, Artis had warrants for his arrest on several offenses, to include Resisting Arrest (Cal. Penal Code § 148), Felon in Possession (Cal. Penal Code § 29800(a)(1)), and Identity Theft (Cal. Penal Code § 530.5).

6. Macey's apartment, was located at 519 Ellis St., Apt. 405, San Francisco, California, in the Tenderloin neighborhood of San Francisco, California, which, based on my training and experience, I know to be a high-crime area of the city. We went to Macey's apartment in the morning. We informed the property manager that we were there to execute an arrest warrant on Artis, and that she let us through the front entrance of the building.

7. When we approached Apartment 405, I knocked on the door loudly, as I have hundreds of times. When I knocked, the door swung open as if it had not been latched shut in the first place. Never before in my career had this happened, and its occurrence struck me as troubling and concerning, especially in the high-crime area in which the apartment was located. I immediately began to fear for the well-being of anyone who might be inside. I decided to conduct a safety sweep of the apartment.

8. We announced our presence and entered the apartment. I and another Task Force member went through the apartment, room by room, checking to see whether anyone inside was in need of help, while the rest of the team waited in the apartment's living room, which was just inside the apartment's front door. Within minutes, I completed my sweep and concluded that nobody was home. I returned to the living room and instructed the team members as such.

9. At that point, however, I noticed an uneven pile of credit cards lying on a countertop not far from the apartment's front door. A few of the cards, I could plainly see, had Donnell Artis's name on them. Based on my prior knowledge of Artis's suspected identity theft, and based on the number of

cards, at least half a dozen, I concluded that these cards were likely counterfeit credit cards. I did not touch the stack of cards, though a team member did take several pictures of the cards. We left and no cards were seized by law enforcement members. Aware that Artis's property was at this location, team members returned a day or two later to conduct surveillance at this location, but because the area was heavily populated, and many people were loitering nearby, we quickly determined that surveillance was not going to be feasible.

    a.    In preparation for this declaration, I consulted members of the Fugitive Task Force, specifically the team members who accompanied me to Macey's apartment on March 24, 2016. In this consultation, one of the team members, regularly a member of the United States Marshals Service, sent me text messages of photographs that he had taken of the cards. One of them is a picture of a wallet flipped open to display an identification card. In the photograph, it appears that, behind the open flap of the wallet, is a finger, which may indicate that the wallet is being held.

    b.    I asked that team member if he or anyone else, while I was conducting my safety sweep, had manually manipulated the cards that I saw on the countertop. The team member told me that he cannot recall whether he or anyone moved any cards. I recall him taking photographs of the cards, but I did not see anyone move any cards.

    c.    Shortly after this conversation and my receipt of these photographs, I discussed the conversation with the Assistant United States Attorney assigned to the case and forwarded the photographs as well.

<u>Second attempted Artis arrest and chase</u>

10.    From conversations with the CI, and from consultation with our Oakland Police Department colleagues, we learned that Artis and his associates often hang out in and around Willie Brown Liquors on Fruitvale Avenue in Oakland, California. We also knew that Artis was reported to be driving a black Infiniti FX. On April 5, 2016, my partner, FBI Special Agent ("SA") Brian Koh, and I

were in that area investigating an unrelated matter. We decided to drive by Willie Brown's to see if we could spot either Artis or Hopkins or their vehicles.

11. As we approached Willie Brown's, we saw what we suspected to be Artis's black Infiniti FX parked out front of Willie Brown's. Artis was standing next to his car, talking on his cellular telephone.

12. At this time, we knew that Artis had run from the police before. In fact, I knew of a specific incident in which Oakland Police attempted to make a routine traffic stop when Artis ran a stop sign while driving his girlfriend's car. During that incident, when police instructed Artis to turn off his car, he fled.

13. Given this history, we parked SA Koh's car on E. 19th St., Oakland, CA near Willie Brown's. I attempted to contact other Fugitive Task Force members. Other members were not available. Therefore, Special Agent Koh and I approached Artis on foot.

14. My badge was around my neck but concealed in my hand. I was not wearing any distinctive law enforcement markings. As we approached Artis, he and I made eye contact. He stepped behind a tree blocking my visual of his whereabouts. SA Koh, to my left, went around the left side of the tree. I went around the right side of the tree. As I came around the tree, Artis had fallen on the ground and I attempted to subdue him. At around this time, I noticed Artis's phone hit the ground. Artis was able to get to his feet and run across Fruitvale Ave., then across Foothill Blvd. We chased after him. Artis continued northbound on Fruitvale Ave., eventually heading west on E. 22nd St. Artis then headed south on Rutherford St., where we lost visual of him. SA Koh and I set up a brief perimeter. Additional law enforcement personnel arrived on scene but the perimeter was taken down shortly thereafter.

15. SA Koh and I returned to Willie Brown Liquors. I realized that my cellular telephone was missing. A female approached me from the direction of Kim's Nails and advised me that a cellular telephone had been retrieved by an employee at Willie Brown's Liquor and that a second cellular

telephone had been picked up by someone and she believed that the phone was in the nail salon. I approached a Willie Brown's employee, who gave me a cellular telephone, which I determined to be Artis's, based on the fact that I saw him drop it and it was not my cellular phone. The female then retrieved my phone from someone at the nail salon and returned it to me.

16. While in possession of Artis' phone, I saw on the locked screen a number from either a missed call or text message; the number was 832-763-5555. It appeared more than one time and at least one time as a missed call. I queried the prefix for this number and found out that 832 primarily originated from Texas. According to my evidence log from near the date of the incident, my acquisition of the phone occurred at 11:00 a.m., April 5, 2016.

17. On April 6, 2016, the CI advised me that the current cellular telephone number for Hopkins was the number I saw on Artis's locked screen, 832-763-5555.

### Hopkins's arrest and the search of his apartment

18. Having learned Hopkins cellular telephone number, on April 7, 2016, I swore out an affidavit and acquired a cell-site simulator warrant from the Superior Court of California.

19. On April 11, 2016, the cell-site simulator narrowed the whereabouts of Hopkins's cell phone to the vicinity of 1st St. and Lansing St. in San Francisco, California. With that information, we turned our investigation to nearby apartment buildings, to include the Jasper San Francisco apartments, to see whether Hopkins lived in any of them. At the Jasper apartments, a parking attendant identified Hopkins as a resident and provided law enforcement with the apartment number. Law enforcement then set up surveillance outside Hopkins's apartment unit.

20. Later that same day, Hopkins was identified leaving his apartment unit and arrested on site for outstanding warrants.

//

### Information provided by CI and sensitivity of CI's identity

DECL. OF STONIE CARLSON
CR 16-00477 VC

5

21. For this investigation, law enforcement relied on information provided by one CI. That CI provided largely background information—namely, that Hopkins and Artis were fugitives; that Hopkins and Artis were associates and co-conspirators in a credit-card fraud involving identity theft; that Artis resided with his girlfriend Macey; and that Hopkins and Artis and other associates of theirs hung out at and around Willie Brown's Liquor in Oakland, California. At least some of this information was independently corroborated. The CI also provided me with Hopkins's telephone number, which I had seen on the locked screen of Artis's cellular telephone.

22. The identity of the CI is highly sensitive. Disclosure of the CI's identity would compromise this investigation. More important, it would jeopardize the safety of the CI.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of November, 2017, in San Francisco, California.

_____
STONIE CARLSON
Special Agent, FBI