Law Offices of
DENA MARIE YOUNG, CSB # 215344
740 4th Street
2nd Floor
Santa Rosa, California 95404
Phone: (707) 528-9479
Fax: (707) 692-5314
E-Mail: dmyounglaw@gmail.com

Attorney for Defendant
THURMAN GAITHER III

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-16-0477-VC |
| Plaintiff, | ) | |
| | ) | GAITHER'S SUPPLEMENTAL BRIEF RE: STANDING, VIOLATION OF PROCEDURAL DUE PROCESS AND SUPPRESSION OF EVIDENCE |
| v. | ) | |
| THURMAN GAITHER III, | ) | |
| Defendant. | ) | |
| | ) | Hon. Vince Chhabria |

## INTRODUCTION

The defendant, Thurman Gaither III, by and through his attorney of record, Dena Marie Young, hereby submits this supplemental briefing pursuant to this Court's February 24, 2018 Order. (Dkt. 214). Gaither generally joins in the briefing filed on behalf of co-defendant Donnell Artis (Dkt. 218). This supplemental is therefore focused on the issues of standing and the consequences of applying the exclusionary rule in this case. Gaither concedes that he lacks standing with respect to the specific targets of the unlawful searches. However, he asserts that the conduct of Agent Carlson in this case was part of a larger pattern of institutionalized misconduct on the part of the government. Neither the purposes of the exclusionary rule, nor due process, would be well served by permitting the government to use illegally obtained evidence against Gaither or any of the co-defendants. Therefore, Gaither asserts that the illegally obtained evidenced be suppressed for all purposes.

1
GAITHER'S SUPPLEMENTAL BRIEF RE: STANDING, VIOLATION OF DUE PROCESS AND SUPPRESSION OF EVIDENCE

I.

STANDING

In order to assert standing for Fourth Amendment purposes, a defendant must have a legitimate expectation of privacy in the subject of the search. *Rakas v. Illinois*, 439 U.S. 128, 133 (1978).

Gaither admittedly cannot assert that he has an expectation of privacy in the contents of Donnell Artis' phone. Nor can he assert a privacy interest in the apartment associated with Chanta Hopkins as there is no evidence that he has ever even visited that location. However, the fruits of these searches form the basis for the entire prosecution against him. Absent the search of Artis' phone, there would have been no investigation of the target practice at the Jackson Arms shooting range. Gaither's connection to Artis and indirectly to Hopkins would not have been discovered. The bulk of the evidence to support the credit card fraud charges consists of computer and production equipment, blank credit cards and foils (including some with Gaither's name on them) which were found in apartments associated with Hopkins.

II.

THE PRACTICES ENGAGED IN BY AGENT CARLSON AT THE DIRECTION OF THE FBI AND U.S. MARSHAL SERVICE VIOLATE GAITHER'S RIGHT TO PROCEDURAL DUE PROCESS AND MUST BE DISCOURAGED BY SUPPRESSION OF THE ILLEGALLY OBTAINED EVIDENCE AND ITS FRUITS

The testimony of Agent Carlson establishes that the search warrants were illegal because a state court judge cannot authorize a federal agent to conduct the search. Because California law was well-established in that area, Agent Carlson should have known that what he was requesting was not authorized. Whether he personally knew or not is not critical to this Court's determination in this case. A much larger issue exists.

Agent Carlson, a special agent with the FBI, was working both as an FBI agent in violent crimes and gangs, and part-time as a member of the U.S. Marshal's fugitive task force. Carlson testified that his job, with respect to the warrants at issue here, was to assist local law enforcement in locating fugitives. Yet, he admitted that, at that time, the FBI had an open

"umbrella" investigation into the "Murder Dubs."[1]  It is no coincidence that Carlson was tasked with looking specifically for Artis and Hopkins.   Both were of interest in connection with that investigation.  Searching for them as "fugitives" allowed the FBI to bypass oversight of their investigation by the U.S. Attorney's Office and the Federal Courts.

Agent Carlson received training from the U.S. Marshal Service that, when he requested search warrants from the state courts, he should request that a federal agent be authorized to conduct the search.  As a federal law enforcement agency, the U.S. Marshals must be held to know the laws, whether state or federal, which govern their day-to-day operations.  It was long-established state law that federal agents are not peace officers and that non-peace officers cannot execute state warrants.  The inclusion of language in a search warrant purporting to authorize a federal agent to conduct the search is a deliberate attempt to circumvent these laws.  The problem lies not just with Agent Carlson, but in the practices of the agency which trained him.

Further, the search warrant applications before this Court show clearly that, in practice, it is much simpler to get a warrant signed by a state court judge than by a federal magistrate.  The warrants at issue were not reviewed or approved by the U.S. Attorney's Office  as would have otherwise been required.  Thus, the agents were operating without any real oversight.  The absence of any specific information regarding the credibility of the informant is one example.

The applications also show that the scope of the investigation exceeded  fugitive recovery.  The nature of the items sought suggest a broader criminal investigation than simply locating a missing person.  For example, the warrant applications specifically sought information relating to credit card fraud, one possible subject of the FBI "umbrella" investigation.  This kind of information would not be of any assistance in locating a fugitive.

In short, the FBI deliberately utilized the U.S. Marshals fugitive-finding function as a means to conduct a criminal investigation without the oversight of the U.S. Attorney's Office or the federal courts.  That method was intended to give them access to the state courts and

---

[1] It is unclear whether the name "Murder Dubs" refers to the neighborhood in Oakland, or whether the FBI deemed it a gang.

3
GAITHER'S SUPPLEMENTAL BRIEF RE: STANDING, VIOLATION OF DUE PROCESS AND SUPPRESSION OF EVIDENCE

permitted them to obtain warrants far more easily than they could have done in the federal courts. This is especially true of the request for the use of cell site simulators where federal procedure requires a more detailed application. The fact that the use of state judges to authorize federal agents to conduct searches was illegal was apparently not a consideration.

This institutionalized circumvention of law amounts to a denial of procedural due process. The violation extends beyond those defendant with Fourth Amendment standing to all defendants charged based on the illegally obtained evidence. The tactics used here to circumvent procedural due process protections are, in their nature, analogous to the techniques utilized by law enforcement to thwart the procedural protections of *Miranda v. Arizona*, 384 U.S. 436 (1966).

In *Missouri v. Seibert*, 542 U.S. 600 (2004), police officers had been trained to question suspects in phases using the the "question-first" method of interrogation. They arrested the suspect and questioned him without a *Miranda* advisement. Once they had obtained a confession, they advised the suspect of his *Miranda* rights then asked him to repeat the confession. As a result of this technique, the initial un-warned statement was suppressed, but the post-warning statement was admitted. *Seibert*, at pp. 609-611.

The Court found that the technique was "a police strategy adapted to undermine the *Miranda* warnings." *Seibert*, at p. 616. It was intended to elicit a confession from someone who might be less inclined to confess if he understood his rights from the outset. *Id*. at p. 613-614. The suspect was never told that his initial statement would not be admissible. *Id*. at p. 616. Once the confession was made and the *Miranda* advisement was given, the suspect would not believe that he had any rights remaining when the officers asked the same questions again. *Id*. at p. 613-614. By utilizing this two-stage interrogation technique, the officers' conduct effectively rendered *Miranda* advisements meaningless. *Id*. at pp. 613-614. As a result of this violation of procedural due process, both the warned and unwarned statements must be suppressed. *Id.*, at p. 617.

By analogy, all evidence obtained as a result of the deliberate violation of procedural due process must be suppressed. In this case, this Court should look, not just to the two warrant

applications presently before it, but to the existence of other unlawful searches affecting these defendants. The searches of apartments at Jefferson Street and Ellis Street were also conducted in violation of the Fourth Amendment. It is impossible to believe that, with so many illegal searches in the same case, that government agents made reasonable efforts to operate within the law. Rather, the number of illegal searches suggests a pattern of misconduct. Agents chose expedience over the rights of the defendants. On these facts, to permit the use of illegally obtained evidence against some defendants while suppressing it as to others would result in a great injustice. Further, it would embolden federal agents to continue the institutionalized practice of avoiding federal scrutiny by utilizing the state courts. While such a practice greatly simplifies the work of the federal agents, it is an end run around the procedural and constitutional protection afforded to federal defendants and must be stopped. This Court has the opportunity to send a strong message that the practice is unacceptable by suppressing the illegally obtained evidence as to all defendants.

Also by analogy, due to lack of standing, suppression would serve the purposes of the exclusionary rule. The "prime purpose of the exclusionary rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (internal quotation marks omitted). In order to deter future conduct, "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment'" *Krull*, at 348-349.

The Ninth Circuit has identified three factors to consider in determining whether the exclusionary rule should be applied in a particular case:

> "(1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error."

*United States v. Sears*, 411 F.3d 1124, 1128 (9th Cir. 2004), citing *United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988).

1    All three of these factors are applicable in this case.  Suppression would send a message to law enforcement that utilizing state courts to avoid federal scrutiny is unlawful and should not be rewarded.  The evidence shows that established California law forbade the execution of state search warrants by federal agents, yet Agent Carlson admitted he had been trained by the U.S. Marshal Service to seek such unlawful authorization.  As it appears that these practices are institutional in nature rather than individual to Agent Carlson, suppression of the illegally obtained evidence as to all defendants would deter the agencies from engaging in such conduct in the future.

Finally, it is within he inherent supervisory powers of ths Court to fashion an appropriate remedy to correct governmental misconduct and to deter such conduct in the future.  "[G]uided by considerations of justice," and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.  *United States v. Hastings*, 461 U.S. 499, 505 (1983); citing *McNabb v. United States*, 318 U.S. 332, 341 (1943).  The use of the supervisory powers serve three purposes: (1) to implement a remedy for violation of recognized rights, *McNabb, supra*, at 340; *Rea v. United States*, 350 U.S. 214, 217 (1956); (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *McNabb, supra*, at 345; *Elkins v. United States*, 364 U.S. 206, 222 (1960);  and (3) as a remedy designed to deter illegal conduct, *United States v. Payner*, 447 U.S. 727, 735-736, n. 8 (1980).   Given the number of illegal searches, the total disregard for the defendants' rights , the deliberate practice of asking state courts to violate state law by authorizing searches by federal agents, and the intentional; use of state courts to bypass federal scrutiny, this is a case which demands that this Court exercise its supervisory powers to send a message to federal law enforcement agencies that this total disregard for law and procedure cannot continue.

## CONCLUSION

For the foregoing reasons, Gaither respectfully requests that this Court suppress all illegally obtained evidence in this case, not just as to those who have traditional standing under the Fourth Amendment, but as to all defendants directly affected by government misconduct.

Dated: March 9, 2018

Respectfully submitted,

_____s/_____
DENA MARIE YOUNG

Attorney for Defendant
THURMAN GAITHER