UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>DONNELL ARTIS, et al.,<br><br>        Defendants. | Case No.  16-cr-00477-VC<br><br>**ORDER GRANTING MOTIONS TO SUPPRESS**<br><br>Re: Dkt. Nos. 118, 127, 130 |

1. The search of Donnell Artis's cell phone pursuant to the April 5 search warrant violated the Fourth Amendment for the following reasons:

- As explained in a concurrently-filed published ruling, Special Agent Stonie Carlson, as a federal law enforcement officer, lacked the authority to search Artis's phone pursuant to a warrant issued by a judge of the Alameda County Superior Court.

- Aside from this foundational problem, the government now disclaims reliance on the most important fact offered by Carlson in the affidavit.  Specifically, the affidavit said that agents had searched the residence of Artis's girlfriend and had seen counterfeit credit cards in Artis's name.  The government has disclaimed the fruits of this search, in part out of an apparent concern that the agents conducted it unlawfully.  *See* Nov. 29, 2017 Hearing Tr. 8:19-9:2; United States' Omnibus Response to Defense Motions at 12 (Dkt. No. 156).  Therefore, the most significant factual basis in the affidavit for probable cause to search Artis's cell phone has been nullified.  *See United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987); *United States v. Grandstaff*, 813 F.2d 1353, 1355-56 (9th Cir. 1987)

(per curiam).

- Another fact offered by Carlson in the affidavit was a statement by a confidential informant that Artis was involved in credit card fraud. However, the affidavit does not explain why the confidential informant should be deemed reliable. And the primary corroboration for the confidential informant's statement – the information about the search of Artis's girlfriend's apartment – is no longer being considered, per the government's request. *See Bishop*, 264 F.3d at 924-26; *United States v. Morales*, 252 F.3d 1070, 1073-77 (9th Cir. 2001); *United States v. Bertrand*, 926 F.2d 838, 842-43 (9th Cir. 1991); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396-98 (9th Cir. 1986).

- The only other facts offered by Carlson in the affidavit were that there were three outstanding warrants for Artis's arrest and that Artis had fled from Carlson and another law enforcement agent earlier that day. This information could presumably have supported a warrant to search Artis's phone for evidence of his whereabouts, but the affidavit did not seek authority to search Artis's cell phone for evidence of his whereabouts. Rather, it vaguely sought permission to search the cell phone for evidence of "criminal activity," without bothering to specify with precision the suspected crime of which evidence was sought. *See United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995); *United States v. Wey*, 256 F. Supp. 3d 355, 384-85 (S.D.N.Y. 2017); *cf. United States v. Hanes*, 336 F. App'x 690, 692 (9th Cir. 2009); *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 704 n.14 (9th Cir. 2009). Without the information about the search of Artis's girlfriend's apartment, and without any information about the reliability of the confidential informant, there was no probable cause to believe that evidence of a particular criminal activity (such as credit card fraud) was on Artis's phone. *See United States v. Luong*, 470 F.3d 898, 904-05 (9th Cir. 2006) (explaining that all information establishing probable cause must be

contained within the four corners of the warrant affidavit).[1]

2. The use of a cell-site simulator to locate Chanta Hopkins, pursuant to the April 7 search warrant, also violated the Fourth Amendment:

- Use of a cell-site simulator requires a warrant. *See United States v. Ellis*, 270 F. Supp. 3d 1134, 1141-46 (N.D. Cal. 2017); *United States v. Lambis*, 197 F. Supp. 3d 606, 609-11 (S.D.N.Y. 2016); *Jones v. United States*, 168 A.3d 703, 711-17 (D.C. 2017); *see also Carpenter v. United States*, No. 16-402, slip op. at 1-2, 16-23 (U.S. June 22, 2018).

- Again, Carlson lacked the authority to execute this warrant as it was issued by a California state judge.

- The government, yet again, disclaims reliance on significant facts presented by Carlson in the affidavit seeking authority to use the cell site simulator to locate Hopkins.  This time, it is a description of a search of Hopkins's prior residence in Oakland during which officers discovered firearms and evidence of credit card fraud.  It seems likely, from the government's description of this search, that it was conducted without a warrant and was unconstitutional, so the government is wise to disclaim reliance on it.  *See* Stipulation and Order re August 20, 2015 Warrantless Search of Jefferson Street Apartment (Dkt. No. 177); Nov. 29, 2017 Hearing Tr. 9:3-10:5.

- Even assuming the remaining information in the affidavit established probable cause to believe that Hopkins was involved in criminal activity, it did not set forth probable cause to believe that the phone number being targeted by Carlson belonged to Hopkins.  The affidavit contains only one piece of information on this issue: a

---

[1] Artis also argues that his cell phone was unlawfully seized in the wake of a physical struggle with the officers on April 5.  However, this argument overlooks the fact that the officers were entitled to attempt to arrest a known fugitive, and that the evidence from the evidentiary hearing was that Artis dropped his phone while trying to escape this attempted arrest.  In light of these circumstances, Carlson lawfully seized the phone.

statement by a confidential informant that the number belonged to Hopkins. But, as with the April 5 warrant, Carlson's affidavit did not explain why the confidential informant should be considered reliable; nor did it contain any other information to corroborate the informant's assertion that the number belonged to Hopkins.[2] Although the government refers generally in its briefs to the idea that a person has a lower expectation of privacy if he's a fugitive, that is beside the point here, because the affidavit failed to establish that the number belonged to a known fugitive. Accordingly, use of a cell-site simulator on that number was not supported by probable cause.

3. The good faith exception to the exclusionary rule does not apply in this case. Perhaps any one of the above-referenced errors, viewed in isolation, could be excused under the good faith exception. But the whole string of errors embodied in these warrant applications militates against applying the good faith exception. Indeed, although the above-described errors are the most egregious ones, they are not the only instances of sloppy, inappropriate law enforcement work:

- Even if Carlson was unaware that California law does not authorize state judges to issue search warrants to federal law enforcement officers, as an FBI agent, Carlson should have given thought (and probably should have sought guidance on the question from the United States Attorney's Office) to whether he was required under Federal Rule of Criminal Procedure 41 to obtain the search warrants from a federal magistrate judge. Carlson testified at the evidentiary hearing that he submitted the April 5 warrant application to a state judge because Artis was a state fugitive, and because he didn't know whether a federal criminal case would be brought against Artis. However, Carlson knew there was an open FBI gang investigation that had

---

[2] Hopkins disputes whether Carlson actually saw the phone number flash on Artis's phone before he sought search warrants for it. However, Carlson's subsequent declarations and testimony at the evidentiary hearing make clear that he saw the number on Artis's phone and, on that basis, sought search warrants related to it.

4

connections to the defendants, and another open FBI investigation relating to Hopkins. Because these investigations could have led to charges brought in federal court, because this investigation related on some level to those existing investigations, and because Carlson is a federal law enforcement officer who participated in each of these searches in a significant way, there is an argument that the searches were "federal in character" – which would mean that Carlson also violated Rule 41 by not going to a federal magistrate judge. At a minimum, Carlson should have more seriously considered whether Rule 41 applied, which neither he nor the government appears to have done. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1213 (9th Cir. 2005); *United States v. Garner*, 119 F. App'x 119, 122-23 (9th Cir. 2004); *United States v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993); *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1283 (9th Cir. 1992); *United States v. Luk*, 859 F.2d 667, 671-73 (9th Cir. 1988); *United States v. Crawford*, 657 F.2d 1041, 1046 (9th Cir. 1981); *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir. 1978); *see also Lustig v. United States*, 338 U.S. 74, 78-79 (1949).

- Although it seems apparent from the context and from the paperwork associated with the April 5 and 7 search warrants that Carlson was contemplating that he and/or other federal officers would execute them, the boilerplate search warrant forms submitted by Carlson and signed by the judges were directed "to any peace officer in the County of Alameda." In addition, the affidavit for the April 5 warrant said that Carlson was "requesting that the Magistrate specifically authorize [him] to *assist* California Peace Officers and the United States Marshal's Service with the service of this order" (emphasis added). The same affidavit, however, also requested that "any federal, state, and/or local law enforcement officers be allowed to conduct the search of Artis' cellular telephone." The language in the affidavits was thus inconsistent and carelessly drafted. It risked the possibility that a judge who did not examine the paperwork carefully would assume federal officers would be merely assisting state

officers in conducting the searches. This is another of the many ways in which Carlson's affidavits reflected a reckless disregard of his obligation to clearly inform the judges of all the pertinent facts.[3]

- In his April 7 search warrant application to use a cell-site simulator, Carlson did not adequately describe how the technology would function, leaving it to the judge to guess how it would work. This may also have been a constitutional defect in the warrant application. But at a minimum, it was dangerously sloppy, risking the possibility that the state court judge may not have understood the invasiveness of the searches she was authorizing. *See United States v. Tutis*, 216 F. Supp. 3d 467, 478-81 (D.N.J. 2016); *see generally Dalia v. United States*, 441 U.S. 238, 257 (1979).

- Even once the federal prosecution had begun, Carlson did not provide the affidavit for the cell-site simulator warrant to the case agent in this case. Nor could Carlson recall whether he had even informed the case agent or the federal prosecutor on the case that he had used a cell-site simulator to locate Hopkins until the case had proceeded to the stage at which the present motions were being filed.

Considered in its totality, the conduct in this case is not the type of relatively isolated, negligent law enforcement conduct for which the good faith exception was designed; it reflects a systematic, repeated recklessness – both by Carlson alone and by his law enforcement partners – that requires exclusion of the evidence. *See Davis v. United States*, 564 U.S. 229, 238-40 (2011); *Herring v. United States*, 555 U.S. 135, 144-48 (2009); *United States v. Lustig*, 830 F.3d 1075, 1079-85 (9th Cir. 2016); *United States v. Dreyer*, 804 F.3d 1266, 1281 (9th Cir. 2015) (en banc); *United States v. Camou*, 773 F.3d 932, 944-45 (9th Cir. 2014); *United States v. Underwood*, 725 F.3d 1076, 1084-88 (9th Cir. 2013); *United States v. Song Ja Cha*, 597 F.3d 995, 1004-07 (9th Cir. 2010); *Luong*, 470 F.3d at 902-05.

---

[3] This is not to say, however, that the state court judges should not have inquired whether Carlson intended for federal officers to execute the warrants, and then rejected the warrant applications upon receiving a response in the affirmative. The paperwork submitted by Carlson raised numerous flags in that regard.

By the same token, Hopkins's arrest did not meaningfully attenuate the connection between the unlawful search and the evidence discovered on Hopkins's person and at his apartment. Notwithstanding the existence of an outstanding arrest warrant for Hopkins, the systematic and reckless misconduct of law enforcement in this case precludes the application of the attenuation doctrine. *See Utah v. Strieff*, 136 S. Ct. 2056, 2063 (2016) (citing *Davis*, 564 U.S. at 236-37); *United States v. Gorman*, 859 F.3d 706, 718-19 (9th Cir. 2017). And in contrast to *Utah v. Strieff*, which involved a type of search that does not require a warrant (that is, a search incident to arrest), use of a cell-site simulator requires a search warrant regardless of whether a defendant has an outstanding arrest warrant, because, as discussed previously, an officer seeking to use a cell-site simulator must demonstrate not merely probable cause to believe that a person is subject to arrest or has engaged in criminal activity, but also probable cause to believe that the targeted phone number belongs to that person. *See also United States v. Patrick*, 842 F.3d 540, 549-51 (7th Cir. 2016) (Wood, J., dissenting). *But see id.* at 542 (majority op.).

Accordingly, the evidence obtained as a result of the search of Artis's phone is suppressed and may not be used against Artis. However, the evidence obtained as a result of this search may still be used against the other defendants (including Hopkins) to the extent it is otherwise admissible. Additionally, the evidence obtained as a result of the April 7 cell-site simulator search on Hopkins's phone is suppressed and may not be used against Hopkins. This includes the evidence seized from Hopkins when he was arrested outside his apartment, and the evidence obtained during the search of his apartment (because the warrant to search his apartment was based on the evidence seized from Hopkins during his arrest). This evidence may, however, be used against the other defendants (including Artis) to the extent it is otherwise admissible. *See United States v. Giraudo*, 225 F. Supp. 3d 1078, 1080 (N.D. Cal. 2016) (citing *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1085-87 (9th Cir. 2015)).

As to the evidence from the federal search warrants executed after the unlawful search of Artis's phone and the unlawful use of the cell-site simulator, the parties have not adequately discussed whether that evidence was the fruit of those unlawful searches. A status conference is

scheduled for July 17, 2018, at 10:30 a.m., to figure out how to tee up this issue, along with any other remaining pretrial issues.

**IT IS SO ORDERED.**

Dated: July 3, 2018

VINCE CHHABRIA
United States District Judge