UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>DONNELL ARTIS, et al.,<br><br>            Defendants. | Case No.  16-cr-00477-VC<br><br>**ORDER RE MOTIONS TO SUPPRESS** |

      In this case, a federal agent obtained search warrants from two Alameda County Superior Court judges.  The first judge authorized the search of a defendant's cell phone.  The second judge authorized the use of a cell-site simulator to locate another defendant.

      The federal agent should not have sought these warrants from those judges, because California law does not allow California state judges to issue search warrants to federal law enforcement officers.  The federal agent should have received training from his employers, the Federal Bureau of Investigation and the United States Marshals Service, about the limits on his authority under state law.  But he received no such training, because apparently his employers were also unaware of these limits.  The Alameda County judges may also have been unaware of this limitation on federal involvement in the state's criminal justice system, although it's possible they were simply misled by the papers submitted by the federal agent in support of the search warrants.

      As explained in a concurrently-filed unpublished ruling, the evidence obtained from these searches will be suppressed.  A federal agent's mistaken belief that he could be issued a search warrant by a California state judge is likely not, on its own, a basis for suppressing evidence

obtained during the search (at least before the publication of this ruling). That is arguably good-faith negligence. But the two warrants were plagued by numerous errors, reflecting a pattern of systematic recklessness by law enforcement that militates in favor of suppressing the evidence (and against applying the "good faith exception" to the exclusionary rule). This ruling is published separately to put the relevant actors in the criminal justice system on notice that California law prevents state judges from issuing search warrants to federal law enforcement officers, which means that federal law enforcement officers are not permitted to execute such warrants.

## I.

Stonie Carlson is a Special Agent with the Federal Bureau of Investigation. He is assigned to a joint federal-state task force headed by the United States Marshals Service. The mission of the task force is to apprehend federal and state fugitives. For the purpose of his work on the joint fugitive task force, Carlson has been deputized as a member of the United States Marshals Service.

In 2015, Carlson began investigating Donnell Artis and Chanta Hopkins. Carlson learned from a confidential informant that Hopkins was engaged in credit card fraud with Artis. Carlson then searched law enforcement databases and learned that California courts had issued arrest warrants for both of them, based on California criminal law violations. Members of the Oakland Police Department informed Carlson that Artis could often be found near a certain liquor store at a street corner in Oakland. On April 5, 2016, Carlson and his partner drove by the store, saw Artis there, and approached him. Artis ran, and dropped his phone.

Later that day, Carlson sought a warrant to search Artis's cell phone. Even though Carlson is a federal officer, he did not seek this warrant from a federal magistrate judge. Rather, he sought it from a judge of the Alameda County Superior Court. In his affidavit to the judge, Carlson identified himself as a member of a joint fugitive task force and explained that the purpose of the task force was "to combine the efforts of federal, state, and local law enforcement agencies to locate and apprehend dangerous fugitives and assist in high profile investigations."

In addition, the affidavit included the following language: "It is requested that any federal, state, and/or local law enforcement officers be allowed to conduct the search of Artis' cellular telephone."  The judge issued the warrant.  A few days later, one of Carlson's federal law enforcement colleagues searched the phone, which revealed evidence of criminal activity.

On April 7, 2016 – two days after Carlson obtained the warrant to search Artis's phone but before the search was actually conducted – Carlson sought another search warrant from a different judge of the Alameda County Superior Court.  The purpose of this warrant application was to get permission to use a cell-site simulator to determine the location of Hopkins's cell phone (and thereby likely determine the location of Hopkins himself).  A cell-site simulator is a device that simulates a cell tower.  That is, it "tricks" nearby cell phones into thinking that it's a cell tower, thereby causing nearby cell phones to send signals to the device, which allows the operator of the device to locate the phone being sought.  *See United States v. Patrick*, 842 F.3d 540, 542-43 (7th Cir. 2016); *United States v. Ellis*, 270 F. Supp. 3d 1134, 1139 (N.D. Cal. 2017); *see also Carpenter v. United States*, No. 16-402, slip op. at 1-2 (U.S. June 22, 2018).  Carlson's affidavit stated that he was seeking authority to use the cell-site simulator on behalf of the United States Marshals Service and the Oakland Police Department, as a member of the task force.  The judge issued the warrant.  This allowed Carlson and his task force colleagues (with a federal officer operating the cell-site simulator) to locate Hopkins at his apartment in San Francisco.  They arrested him outside the apartment and seized evidence of credit card fraud from him during that arrest.

## II.

Although the April 5 and April 7 warrants were plagued by various problems, one defect deserves special attention and is therefore the subject of this separate published ruling: under California law, federal law enforcement officers are not permitted to execute search warrants issued by California state judges.

California law specifies that a search warrant must be executed by a "peace officer."  Specifically, section 1523 of the Penal Code defines a search warrant as a written order "signed

3

by a magistrate, directed to a peace officer, commanding him or her to search for a person or persons, a thing or things, or personal property."  Paralleling this language, section 1528 says that when a state judge determines that a search warrant application establishes probable cause, the state judge "must issue a search warrant . . . to a peace officer in his or her county."  Cal. Penal Code § 1528(a); *see also id.* § 1528(b).

Chapter 4.5 of Title 3 of the Penal Code specifies who counts as a "peace officer."  Its first provision, section 830, states: "no person other than those designated in this chapter is a peace officer."  Sections 830.1 through 830.15 identify "persons who are peace officers," listing members of city police departments, the California Attorney General's office, local sheriffs' departments, and other state law enforcement officials.  This list does not include federal law enforcement officers.

Another section in this chapter of the Penal Code gives federal law enforcement officers limited powers of *arrest*, but even while doing so, underscores that federal law enforcement officers do not generally have the authority that peace officers do.  Specifically, section 830.8 states: "Federal criminal investigators and law enforcement officers are not California peace officers, but may exercise the powers of arrest of a peace officer" under specified circumstances, including when the federal officers are enforcing federal law, when they've been requested by a California law enforcement agency to participate in a joint law enforcement task force, or when a public offense that involves immediate danger to people or property is being committed.  The precise and circumscribed language of this provision reinforces the fact that state court judges may not issue search warrants to federal law enforcement officers.[1]

In its initial brief opposing the defendants' motions to suppress, the federal government pointed to federal law which authorizes certain federal law enforcement officers to act as state law enforcement officers.  Specifically, the government argued that because 28 U.S.C. § 564

---

[1] Section 1530 of the Penal Code does not change this conclusion: even though it says that a search warrant may be served by officers "mentioned in its directions," it must be read in conjunction with sections 830.8 and 1523, which make clear that state search warrants must be directed to peace officers, and that federal officers do not count.

4

authorizes members of the United States Marshals Service to exercise the "same powers which a sheriff of the State may exercise in executing the laws thereof," and because a "sheriff" is listed as a state peace officer in section 830.1 of the Penal Code, United States Marshals have all of the powers of California peace officers. *See* United States' Sur-Reply to Defendants' Motions to Suppress at 7-8 (Dkt. No. 175-1); *see also* 28 U.S.C. § 566 (listing the powers and duties of United States Marshals, including investigating fugitives); Authority of FBI Agents, Serving as Special Deputy United States Marshals, to Pursue Non-Federal Fugitives, 19 Op. O.L.C. 33 (1995). But as the government now acknowledges, this argument overlooked a state's authority to decide how its own criminal justice system will operate. Even though federal law may authorize federal agents to act as state peace officers, each state retains the ability to limit the involvement of federal law enforcement in administering that state's criminal laws. Some states have authorized federal law enforcement officers to act as state peace officers. *See, e.g.*, *State v. Quevedo*, 843 N.W.2d 351, 354-56 (S.D. 2014). But California chose to limit federal authority to enforce state criminal law by specifying that federal criminal law enforcement officers are not state peace officers. *See* 80 Cal. Att'y Gen. Op. No. 97-505 (Oct. 24, 1997) ("It is the prerogative of California to prescribe the qualifications of its officers and the manner in which they shall be chosen. Therefore, federal officers have only such powers to enforce California laws as the State of California has conferred upon them." (internal quotation marks and citation omitted)).

### III.

It appears from these proceedings that many key members of the criminal justice community may have been unaware that California law restricts state court judges from issuing search warrants to federal law enforcement officers.

Carlson himself was unaware of it (notwithstanding the defendants' assertion that he engaged in intentional misconduct). Carlson's testimony at the evidentiary hearing in this case revealed that he failed to distinguish in his mind: (i) the concept of submitting an affidavit in support of a search warrant; from (ii) the concept of being issued and executing a search warrant. The former is lawful: an affiant in support of a search warrant need not be a "peace officer"

5

under California law.  *See People v. Bell*, 45 Cal. App. 4th 1030, 1054-55 (1996), *abrogated on other grounds by People v. Athar*, 105 Cal. App. 4th 479 (2002).  But the latter is not lawful, as discussed in the preceding section.  Carlson simply assumed both were allowed.

      The United States Attorney's Office was also apparently unaware of this restriction.  As discussed above, the position initially taken by the office failed to recognize that it is not enough for federal law to authorize a federal officer to function as a state peace officer; state law must also do so.  The office appears to understand that now and has acknowledged that Carlson is not a peace officer under California law and did not have the authority to execute the state search warrants.  *See* Government's Post-Hearing Brief at 2, 6 (Dkt. No. 227).

      It may be that the Alameda County District Attorney's Office is also unaware of the restrictions on search warrants.  At the evidentiary hearing, Carlson claimed that his decision to seek the warrants from state court judges, rather than a federal magistrate judge, was based partly on training his colleagues received from that office.  This statement by Carlson may or may not accurately reflect whatever his colleagues learned or told him, since Carlson's general conduct in this case, as well as his testimony at the evidentiary hearing, shows that he is neither well-trained nor particularly concerned with complying with the law in conducting his enforcement activities.  It might be that the District Attorney's Office merely told Carlson's colleagues that federal officers may submit affidavits in support of search warrants to be issued to California peace officers (consistent with the above-referenced *Bell* decision), as opposed to telling them that federal officers may be issued and execute search warrants themselves.

      Finally, the two state court judges who issued the warrants may have been unaware of the legal limits on Carlson's ability to insert himself into the state criminal justice system.  The record is not clear on this point.  As discussed in the separate unpublished ruling, although the state court judges likely should have known that Carlson was seeking authorization for himself and other federal officers to execute the searches, it is possible they were misled by the paperwork Carlson submitted to them.

      Because this is an important issue about which many people in the California criminal

justice community may still be unaware, the Court requests that United States Attorney for the Northern District of California transmit a copy of this ruling to the relevant local supervisors in the Federal Bureau of Investigation, the relevant local supervisors in the United States Marshals Service, the Alameda County District Attorney, the Oakland City Attorney (who represents the Oakland Police Department), the presiding judge of the Alameda County Superior Court, the United States Attorneys for the other districts in California, and the California Judicial Council.

**IT IS SO ORDERED.**

Dated: July 3, 2018

VINCE CHHABRIA
United States District Judge